**LION RAISINS, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 02–29 C.

United States Court of Federal Claims.

Nov. 20, 2002.

Brian C. Leighton, Clovis, CA, for plaintiff.

Steven J. Abelson, with whom were Robert D. McCallum, Jr., Assistant Attorney General, David M. Cohen, Director, and Donald E. Kinner, Assistant Director, U.S. Department of Justice, Washington, DC, for defendant. Colleen A. Carroll, Office of General Counsel, Department of Agriculture, Washington, DC, of counsel.

## OPINION AND ORDER

HEWITT, Judge.

This is a claim by a raisin packer for damages resulting from defendant's conduct of inspections under the statutes and regulations governing raisin processing and packaging. Defendant, acting through the United States Department of Agriculture (USDA), moves to dismiss for lack of subject matter jurisdiction or, alternatively, for failure to state a claim upon which relief may be granted. For the following reasons, the motion to dismiss for lack of subject matter jurisdiction is GRANTED.

### I. Background

Plaintiff Lion Raisins, Inc. (Lion Raisins) is a California company that has been marketing raisins since 1903.[1] Complaint (Compl.) ¶¶ 1, 4. Lion Raisins purchases raisins from growers in the Central San Joaquin Valley of California, processes the raisins, and then sells them to various buyers domestically and internationally. *Id.* at ¶ 4. As a raisin handler,[2] Lion Raisins is subject to the Raisin Marketing Order established by USDA in furtherance of The Agricultural Marketing Agreement Act, 7 U.S.C. §§ 601–626 (1999 and West Supp.2002).

---

1. Formerly known as Lion Enterprises, the company changed its name to Lion Raisins, Inc. in September 1999. Complaint (Compl.) ¶ 1.

2. The parties do not dispute that under 7 C.F.R. § 989.15, Lion Raisins is a "handler." *See* Compl. ¶ 6; Plaintiff's Opposition to Defendant's Motion to Dismiss (Pl.'s Opp.) at 2, ¶ 6; Defendant's Motion to Dismiss (Def.'s Mot.) at 12 n. 2.

Title 7, Code of Federal Regulations, Section 989.58(d)(1) provides:

Each handler shall cause an inspection and certification to be made of all natural condition raisins acquired or received by him.... Except as otherwise provided in this section, prior to blending raisins, acquiring raisins, storing raisins, reconditioning raisins, or acquiring raisins which have been reconditioned, each handler shall obtain an inspection certification showing whether or not the raisins meet the applicable grade and condition standards.... The handler shall submit or cause to be submitted to the committee a copy of such certification, together with such other documents or records as the committee may require. Such certification shall be issued by inspectors of the Processed Products Standardization and Inspection Branch of the U.S. Department of Agriculture ....

7 C.F.R. § 989.58(d)(1).

In accordance with that statute and the applicable regulations, all incoming and outgoing raisins handled by Lion Raisins must be inspected by USDA. Compl. ¶ 6. USDA charges raisin packers an inspection fee to cover the cost of "service rendered." *See id.* (citing 7 U.S.C. § 1622(h)).

Plaintiff alleges that "[f]rom and including 1995 through the 2001 crop year, Lion has averaged approximately 50,000 tons of raisins ... [for] which it was required to pay the USDA inspection service fee at an average price of $ 17.00 per ton (includes both incoming and outgoing [raisin inspection] fees, and $18.00 per ton since and including the 2000 crop year)." Compl. ¶ 7. Plaintiff asserts that "[i]mplied in the contract that Lion has with USDA for the inspection services, is USDA's commitment that it would fairly, accurately, and completely inspect the raisins and give a true and correct accounting as to the quality of the raisins," *Id.* at ¶ 8, and that such inspections would be conducted in accordance with the applicable regulations. *Id.* at ¶ 9.

On January 9, 2002, plaintiff filed a two-count complaint. Plaintiff asserts that "[t]his court has jurisdiction pursuant to 28 U.S.C. §§ (sic) 1491(a)(1) in that this complaint involves a contract with the United States, through the USDA, and is also a claim against the United States founded upon a regulation of an Executive Department, that is the United States Department of Agriculture, and an Act of Congress." Compl. ¶ 3.

In its first count ("Breach of Implied Contract"), plaintiff alleges that USDA breached "an implied-in-fact" contract with Lion Raisins to perform faithful, honest and accurate inspections. Compl. ¶¶ 12–13. Plaintiff claims that USDA breached its implied contract with Lion Raisins by, *inter alia,* falsely claiming to have conducted inspections, failing to perform all of the required tests and fabricating test results, and preparing false inspection certificates. *See* Compl. ¶ 10.

Lion Raisins alleges that, as a result of USDA's breach, it paid for "inspection services ... which were not faithfully performed, ... or were not earned." Compl. ¶ 13. Lion Raisins also alleges that it incurred additional inspection expenses "to have its own inspection done ... to insure the quality of the product that the buyer receives." *Id.*

In its second count ("Violation of Statute or Regulation"), plaintiff complains that USDA intentionally and/or negligently failed to faithfully, honestly and accurately provide inspection services to Lion in violation of the regulations and marketing order. Compl. ¶¶ 14–15. Plaintiff alleges that USDA's regulatory violations "entitl[ed] Lion to a refund of the [inspection] fees paid." Compl. ¶ 15.

Defendant moved to dismiss the first count of the complaint for failure to state a claim upon which relief could be granted on the ground that plaintiff failed to establish the existence of an implied-in-fact contract.[3] Defendant's Motion to Dismiss (Def.'s Mot.) at 1, 8–15. Defendant moved to dismiss the second count for lack of subject matter jurisdiction because the laws on which plaintiff relies are not money-mandating.[4] *Id.* at 23. Defendant also alleged that both counts sounded in tort and thus, did not fall within the jurisdiction of the court. Def.'s Mot. at 15–18, 21–23.

In opposing defendant's motion to dismiss, however, plaintiff changed the theory underlying its second cause of action from "a claim founded upon a regulation of an Executive Department [namely USDA] and an act of Congress," Compl. ¶ 3, and asserted for the first time that the second count of the complaint is an illegal exaction claim over which the court may exercise jurisdiction. *See* Plaintiff's Opposition to Defendant's Motion to Dismiss (Pl.'s Opp.) at 7–9. Defendant replied that plaintiff's second cause of action

---

**3.** A complaint that does not establish the elements of an implied-in-fact contract may be dismissed for failure to state a claim upon which relief may be granted. *See City of Cincinnati v. United States,* 153 F.3d 1375, 1378 (Fed.Cir. 1998).

**4.** The appropriate disposition for a complaint that fails to identify a money-mandating provision in the applicable statutes is dismissal for failure to state a claim. *See Gollehon Farming v. United States,* 207 F.3d 1373, 1379 (Fed.Cir. 2000).

did not support an illegal exaction claim.[5] Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss (Def.'s Reply) at 11–15.

## II. Discussion

### A. Standard of Review

Defendant moves to dismiss the first count of plaintiff's complaint ("Breach of Implied Contract") under RCFC 12(b)(6) for failure to state a claim upon which relief can be granted. Def.'s Mot. at 20–21. The Supreme Court has stated that in evaluating a motion to dismiss for failure to state a claim, "the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *see also Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed.Cir.1989); *LaMirage, Inc. v. United States*, 44 Fed.Cl. 192, 196 (1999). In rendering a decision on a motion to dismiss, the court must presume that undisputed factual allegations in the complaint are true. *Miree v. DeKalb County, Ga.*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977); *Reynolds v. Army and Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed.Cir.1988); *LaMirage*, 44 Fed.Cl. at 196.

Defendant moves to dismiss the second count of the complaint ("Violation of Statute or Regulation") under Rule 12(b)(1) of the United States Court of Federal Claims (RCFC) for lack of subject matter jurisdiction. Def.'s Mot. at 1. The Tucker Act, 28 U.S.C. § 1491, confers on this court jurisdiction of claims "founded either upon the Constitution or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (1996). The Tucker Act does not create a substantive right of recovery; rather it gives this court jurisdiction only when there is a separate money-

mandating statute. *United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *New York Life Ins. Co. v. United States*, 118 F.3d 1553, 1555–56 (Fed.Cir. 1997); *Dehne v. United States*, 970 F.2d 890, 893 (Fed.Cir.1992). Plaintiff bears the burden of establishing that subject matter jurisdiction exists. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189–90, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed.Cir.1998); *Reynolds v. Army and Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed.Cir.1988).

### B. The Complaint Does Not Establish an Implied–In–Fact Contract

■ In its complaint, Lion Raisins alleges that its contract with USDA exists "[p]ursuant to the Raisin Marketing Order, and the USDA requirement that raisins be inspected by the USDA inspection service, and that [Lion Raisins] pay for said services ...." Compl. ¶ 13. Plaintiff further alleges that the terms of its implied contract included standards for USDA's performance of inspection services:

> Implied in the contract that Lion has with USDA for the inspection services, is USDA's commitment that it would fairly, accurately, and completely inspect the raisins and give a true and correct accounting as to the quality of the raisins, including moisture percentage, maturity, size, cap stems, stems, damage, discoloration, mold, sugar, sand, color and flavor, sub-standard, and then a final overall grade of the product.

Compl. ¶ 8.

The determinative question here is whether the contract terms alleged by plaintiff could be interpreted to show a contract within this court's jurisdiction. The Federal Circuit has stated:

---

5. Defendant also argues that plaintiff's claim for repayment of the inspection fees paid in 1995 are time-barred under 28 U.S.C. § 2501. Def.'s Mot. at 6. The Supreme Court has stated, however, that subject matter jurisdiction is a "threshold matter" that must be addressed before the merits of a claim are reached. *Steel Co. v. Citizens for a*

*Better Env't*, 523 U.S. 83, 94–95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998); *see also Nippon Steel Corp. v. United States*, 219 F.3d 1348, 1352 (Fed. Cir.2000). In the light of the court's opinion that it lacks jurisdiction, the court does not reach defendant's statute of limitations argument.

To show jurisdiction in the Court of Federal Claims, [the plaintiff] must show that either an express or implied-in-fact contract underlies its claim. A well-pleaded allegation in the complaint is sufficient to overcome challenges to jurisdiction .... [Such] allegation suffices to confer subject matter jurisdiction in the Court of Federal Claims.

*Trauma Serv. Group v. United States*, 104 F.3d 1321, 1325 (Fed.Cir.1997) (citations omitted). Under the Tucker Act, jurisdiction based on contract "extends only to contracts either express or implied in fact, and not to claims on contracts implied in law." *Hercules, Inc. v. United States*, 516 U.S. 417, 423, 116 S.Ct. 981, 134 L.Ed.2d 47 (1996); *Trauma Serv. Group*, 104 F.3d at 1324.

To plead a contract claim, whether express or implied, within Tucker Act jurisdiction, a complainant must allege mutual intent to contract including an offer, an acceptance, consideration and facts sufficient to establish that the contract was entered into with an authorized agent of the United States who "had actual authority to bind the United States." *Trauma Serv. Group*, 104 F.3d at 1325.

In its motion to dismiss, defendant argues that Lion Raisins's alleged contract "was for the Government to conduct inspections of (1) incoming raisins, *i.e.* raisin (sic) Lion received from its suppliers; and (2) outgoing raisins, *i.e.* raisins Lion shipped to its customers." Def.'s Mot. at 10 (citing Compl. ¶¶ 8, 13). Defendant contends that, "by Lion's own admission, the requirement for inspections and the payment of fees were pursuant to law and not the result of (1) an offer, (2) acceptance, (3) consideration, and (4) an agreement with a Government agent authorized to bind the Government." Def.'s Mot. at 11.

---

**6.** Title 7, Code of Federal Regulations, Section 989.59(d) provides:

Unless otherwise provided in this section, each handler shall, at his own expense, before shipping or otherwise making final disposition of raisins, cause and inspection to be made of such raisins to determine whether they meet the then applicable minimum grade and condition standards for natural condition raisins or the then applicable minimum grade standards for packed raisins. Such handler shall obtain

The court agrees. Although the first count of plaintiff's complaint alleges that the government breached an implied-in-fact contract with Lion Raisins, *see* Compl. ¶¶ 12–13, plaintiff fails to set forth facts in its complaint establishing the required elements of a contract claim. Plaintiff relies instead on the application of the Raisin Marketing Order to plaintiff's business as the source of plaintiff's implied-in-fact contract with USDA. *Id.* at ¶¶ 5, 13.

The inspection services that Lion Raisins alleges to be USDA's contractual duties are, in fact, required by law. By statute, the Secretary of Agriculture is directed and authorized:

To inspect, certify, and identify the class, quality, quantity, and condition of agricultural products when shipped or received in interstate commerce, under such rules and regulations as the Secretary of Agriculture may prescribe, including assessment and collection of such fees as will be reasonable and as nearly as may be to cover the cost of the service rendered ....

7 U.S.C. § 1622(h). Pursuant to this statutory mandate to prescribe regulations, the USDA promulgated regulations requiring: (1) the inspection of raisins received from growers by a raisin handler (incoming raisin inspections) and (2) the inspection of raisins sold by a raisin handler (outgoing raisin inspections).[6] *See* 7 . C.F.R. §§ 989.15, 989.58(d)(1), 989.59(d).

Plaintiff does not dispute that the inspection services are required by law. *See* Pl.'s Opp. at 5. Plaintiff acknowledges that:

Under the statute, Lion is required to have inspection services performed. The government mandates those inspection services. The government also mandates that

a certificate that such raisins meet the aforementioned applicable minimum standards and shall submit or cause to be submitted to the committee a copy of such certificate together with such other documents or records as the committee may require. The certificate shall be issued by the Processed Products Standardization and Inspection Branch of the United States Department of Agriculture ....

7 C.F.R. § 989.59(d).

Lion pay the inspection fees, even though those inspection fees are imposed unilaterally by the USDA.

Pl.'s Opp. at 5. Plaintiff reasons that "since Lion has agreed to those inspections services in return for consideration of the inspection fee that there is an 'offer, acceptance, and consideration.' ... It is basically a contract by fiat." *Id.* Plaintiff contends that "when a statute *requires* that Plaintiff engage the services of government personnel, and the Plaintiff must pay the government consideration for those required services, there is an implied in fact contract, whether it's a contract based upon fiat by a government statute, and thus a contract of adhesion or is 'voluntary'." *Id.*

Plaintiff's argument misapprehends the law. In *Russell Corp. v. United States,* 210 Ct.Cl. 596, 537 F.2d 474 (1976), the United States Court of Claims specifically held that a duty imposed by law did not create a contract within the Tucker Act jurisdiction of the court:

> Implied-in-fact contracts differ from contracts implied in law (quasi-contracts), where a duty is imposed by operation of law without regard to the intent of the parties. Such arrangements are treated as contracts for the purposes of remedy only. This court, of course, has no jurisdiction to render judgment against the United States based upon a contract implied in law.

537 F.2d at 482, *cert. denied,* 429 U.S. 1073, 97 S.Ct. 811, 50 L.Ed.2d 791 (1977). *See also City of Cincinnati v. United States,* 153 F.3d 1375, 1377 (Fed.Cir.1998) (Implied-in-fact contract arises when parties' conduct indicates mutual assent in absence of express offer and acceptance and is distinguishable from an implied in law contract that imposes duties which arise by operation of law and fall outside the jurisdiction of the Court of Federal Claims.). Any obligations which arise under the Raisin Marketing Order would be implied in law, not implied-in-fact,

and are therefore outside of this court's jurisdiction.[7]

## C. The Regulations On Which Plaintiff Bases Its Complaint Are Not Money-Mandating

Lion Raisins alleges that this court has subject matter jurisdiction to entertain its complaint pursuant to the Tucker Act on the ground that its claim is "a claim against the United States founded upon a regulation of an Executive Department, that is the United States Department of Agriculture, and an Act of Congress." Compl. ¶ 3. In its second cause of action, Lion Raisins asserts that the USDA's conduct of raisin inspection services "amount[ed] to a violation of the regulations and marketing order entitling Lion to a refund of the fees paid." Compl. ¶ 15.

Defendant argues, in its motion to dismiss, that the court lacks jurisdiction to hear plaintiff's second cause of action because the statute and regulations cited by Lion Raisins are not money-mandating. Def.'s Mot. at 23–26. Defendant contends that plaintiff has failed to establish that it has a statutory right to the compensation it seeks. *See* Def.'s Mot. at 25.

The Tucker Act authorizes an action to be maintained in the Court of Federal Claims if it is "found ... upon ... any Act of Congress, or any regulation of an executive department ...." 28 U.S.C. § 1491(a)(1). To establish jurisdiction in this court, a complainant must show that it has a statutory right to the payment of money damages. *See Testan,* 424 U.S. at 400, 96 S.Ct. 948 (stating that "the asserted entitlement to money damages depends upon whether any federal statute 'can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained'") (quoting *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 372 F.2d 1002, 1009 (1967)); *Worthington v. United States,* 168 F.3d 24, 26 (Fed.Cir.1999) (Claimant must invoke a statute that mandates the payment of money damages to fall within the Tucker Act's juris-

---

**7.** It is clear from what plaintiff has alleged, namely that its contract is by "fiat," *see* Pl.'s Opp. at 5, that an opportunity to amend the complaint would not result in a contract claim that this court could hear. Plaintiff's complaint is about the imposition of the inspection scheme, not about an agreement between the parties that has merely been inartfully described.

dictional grant.). In determining whether a statute establishes a substantive right to compensation, the court must examine the language and effect of the statute. *See Lewis v. United States,* 32 Fed.Cl. 59, 63 (1994). "If the language and effect of the statute is mandatory, then the court possesses jurisdiction [under the Tucker Act] to hear the case based on that money-mandating statute." *Id.*

The statute and regulatory provisions on which Lion Raisins relies to establish jurisdiction are 7 U.S.C. § 1622(h) and 7 C.F.R. §§ 989.58, 989.59, 989.158, and 989.159. Title 7, United States Code § 1622(h) provides the authority for the USDA to conduct inspections of agricultural products and charge fees for those inspections, *see* 7 U.S.C. § 1622(h), and the cited regulations implement that statute for raisins grown and processed in California. *See* 7 C.F.R. §§ 989.58, 989.59, 989.158, and 989.159. Plaintiff does not allege in its complaint that the provisions are money-mandating, *see* Compl. ¶¶ 3, 6, 15, and a review of the provisions indicates that neither the statute nor the regulations "mandates the payment of money for [the government's] failure to carry out the provisions of the statute [or the regulations]." *See Bay View, Inc. v. United States,* 278 F.3d 1259, 1265 (Fed.Cir.2001). To the contrary, as defendant pointed out in its motion to dismiss, *see* Def.'s Mot. at 25, the only payment of money mandated by either the statute or the regulations is payment by Lion Raisins to the government for the inspections of its raisins.

The Federal Circuit has stated, "[I]n order to state a claim under the Tucker Act, [a claimant] must find a substantive right in . . . an act of Congress, or an executive department regulation on which to base [its] claim that 'can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.' " *Dehne,* 970 F.2d at 893 (citations omitted). Because neither the cited statute nor the cited regulations establish a substantive right to compensation, they are not money-mandating. *See Lewis,* 32 Fed.Cl. at 63. Absent a statutory right to money damages, the court lacks jurisdiction to hear plaintiff's second cause of action.

## D. Lion Raisins Has Not Pleaded an Illegal Exaction Claim

For the first time in its opposition, plaintiff argues illegal exaction as an additional jurisdictional base. Plaintiff contend that because "government officials exact[ed] money from Plaintiff pursuant to a statute, . . . [without] honestly and faithfully perform[ing] the services rendered in return for the consideration paid by Lion, this court has jurisdiction." Pl.'s Opp. at 8. Plaintiff cites *Aerolineas Argentinas v. United States,* 77 F.3d 1564 (Fed.Cir.1996) and *Clapp v. United States,* 127 Ct.Cl. 505, 117 F.Supp. 576 (1954) in support of its contention. Pl.'s Opp. at 7–8.

■ Illegal exaction cases are "those in which the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum," on the ground that "the value sued for was improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute or regulation." *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 372 F.2d 1002, 1007 (1967). In a circumstance in which a plaintiff "made payments that by law [a government agency] was obliged to make," the Federal Circuit observed that "the government ha[d] 'in its pocket' " money corresponding to the payments that were the government's statutory obligation. *Aerolineas Argentinas,* 77 F.3d at 1573. Accordingly, the Federal Circuit held, "Suit can be maintained under the Tucker Act for recovery of the money illegally required to be paid on behalf of the government." *Id.* at 1573–74.

■ Here, defendant correctly points out that this case is not about money required to be paid by plaintiff "on behalf of the government," but rather about money required to be paid by plaintiff on plaintiff's own behalf:

Lion does not claim that it was required to pay the Government money that, pursuant to regulation or statute, Lion was not required to pay. To the contrary, Lion unequivocally states that "[Lion's] complaint alleges that *regulations and statutes re-*

quired Lion to pay USDA a fee for the USDA providing inspection services."

Def.'s Reply at 14–15.

As defendant argues, the cases plaintiff cites are clearly distinguishable from plaintiff's case. *Id.* at 14. In *Aerolineas Argentinas*, the illegal exaction arose from the government's collection of money from the plaintiff that, under the applicable law, it was no longer entitled to collect. *See* 77 F.3d at 1574. Moreover, in *Clapp,* the Court of Claims considered a circumstance in which the government had required the plaintiff to pay money for permission to sell a ship to an alien purchaser even though the applicable statute did not authorize the imposition of such a charge. *See* 117 F.Supp. at 578. The court determined that plaintiff's claim was for a wrongful exaction of money rather than a tort because the government required a statutorily unauthorized payment of money and held that it possessed jurisdiction to hear the claim. *Id.* at 515, 117 F.Supp. 576.

Plaintiff here does not allege that it paid USDA inspection fees that were unauthorized by law or, as contemplated by the case law on illegal exaction, were "improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute or regulation." *Eastport S.S. Corp.,* 372 F.2d at 1007. Plaintiff's second cause of action fails to state an illegal exaction claim.

### E. Both of Plaintiff's Causes of Action Sound in Tort

■ Notwithstanding plaintiff's characterization of its first cause of action as a breach of implied-in-fact contract and its second cause of action as a suit under a money-mandating law or, alternatively, a suit for refund of illegal exaction, both counts of the complaint actually sound in tort. In its first cause of action, Lion Raisins alleges that it was damaged because it paid USDA for inspection services "which services were not faithfully performed, and/or for which the fees were not earned." Compl. ¶ 13. Lion Raisins further alleges that "[i]f USDA accu-

rately, honestly and fairly performed the inspection service, Lion Raisins would not have had to spend virtually the approximate same amount of money doing its own inspection of its product." *Id.; see also* Compl. ¶¶ 8, 10.

Plaintiff's second cause of action alleges entitlement to a refund of the inspection fees it paid because the Government's "intentional and/or negligent failure to faithfully, honestly, and accurately provide inspection services to Lion amounts to a violation of the regulations and the marketing order." Compl. ¶ 15. The second count of plaintiff's complaint specifically accuses the Government of negligence. *Id.*

"Jurisdiction to resolve claims sounding in tort does not lie in this court." *Sunrise Village Mobile Home Park, L.C. v. United States,* 42 Fed.Cl. 392, 404 (1998). The court's jurisdictional statute, the Tucker Act, explicitly states, "The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States ... *not sounding in tort.*" 28 U.S.C. § 1491(a)(1) (emphasis added). The case law makes clear that when no contractual duty exists, the negligent or careless performance of a duty by the government sounds in tort and fall outside of this court's jurisdiction. *See, e.g., H.F. Allen Orchards v. United States,* 749 F.2d 1571, 1576 (Fed. Cir.1984) (In the absence of a contractual duty, negligent governmental performance of a duty may support a tort claim.); *Krigel v. United States,* 229 Ct.Cl. 73, 662 F.2d 741, 746–47 (1981) ("A claim based on the careless performance of [noncontractual] duty by a government employee sounds in tort and is beyond the jurisdiction of this court.").

In its complaint, Lion Raisins seeks to recover damages for: (1) the careless performance of a duty allegedly owed by USDA to Lion Raisins; and (2) the unauthorized acts of USDA officials during the performance of the raisin inspections. *See* Compl. ¶¶ 10, 13, 15. As allegations sounding in tort, the claims are beyond this court's subject matter jurisdiction.[8] *Fla. Rock Indus., Inc. v. Unit-*

---

**8.** The court's determination that the allegations in plaintiff's complaint sound in tort is further supported by the allegations set forth in plaintiff's Federal Torts Claim Act ("FTCA") claim.

On or about March 8, 2002, approximately two months after plaintiff filed its complaint in this court, Lion Raisins filed a FTCA claim. *See* Appendix to Defendant's Motion to Dismiss

*ed States,* 791 F.2d 893, 898 (Fed.Cir.1986), *cert. denied,* 479 U.S. 1053, 107 S.Ct. 926, 93 L.Ed.2d 978 (1987) ("The Tucker Act suit in the Claims Court is not ... available to recover damages for unauthorized acts of government officials."); *Somali Dev. Bank v. United States,* 205 Ct.Cl. 741, 508 F.2d 817, 821 (1974) ("[C]laims based on ... the careless performance of a duty allegedly owed[ ] are claims sounding in tort."). Because the court lacks the power to adjudicate a claim sounding in tort, plaintiff's claim is outside the court's subject matter jurisdiction. *See Palmer v. United States,* 168 F.3d 1310, 1313 (Fed.Cir.1999).

### III. Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss is GRANTED. The Clerk of the Court is directed to dismiss the complaint without prejudice.

IT IS SO ORDERED.

(Def.'s App.) at 1–6. In that claim, Lion Raisins asserted that "USDA inspection officials ... breached their duty to [Lion Raisins] to use due care in the inspection of those incoming raisins and [the supervising government agent] breached his duty in the supervision of those raisin inspectors. The USDA employee's negligence in im-properly inspecting and grading the raisins ... as well as USDA['s] negligence in supervising the grading and inspection caused [Lion Raisins] damages". *Id.* at 5.